and Case No. 21-1370, both from the District of Western Missouri. Michael Vogt v. State Farm Life Insurance Company. Mr. Root, you may proceed. Thank you, Your Honor. Good afternoon and may it please the Court. I represent State Farm Life Insurance Company in this appeal. We're asking this Court to reverse the District Court's judgment awarding pre-judgment interest for three reasons. First, the amount of damages was not readily ascertainable by reference to recognized standards until the time that the jury entered its verdict in the case. That's a requirement for an award of pre-judgment interest under Missouri law that the plaintiffs fail to meet in this case. The facts do not support that award. Second, the plaintiffs sought and received a judgment for tort of conversion as well as breach of contract. Having sought and received that tort judgment, the only way they can recover pre-judgment interest is through compliance with the demand requirements of Missouri law, which they concede they have not done. And third, should the Court conclude that pre-judgment interest is warranted, the calculation of the District Court was erroneous because it included pre-judgment interest for 11,000 plus life insurance policyholders whose damages were fixed by the jury and whose policies were current at the time of trial. I would like to begin with the first issue as to whether the damages in this case were readily ascertainable by a recognized standard. They were not. As this Court noted in Travelers Property Casualty Company in 2013, a case that the plaintiffs rely on as central support for their position. It is a novel situation where there was justifiable lack of certainty as to whether liability existed and as to the measure of damages. It was distinguishing travelers, a case where there was a demand made, a certain demand made, and a pre-judgment interest was warranted. Under circumstances where you have that novel situation as we have here, there is no recognized standard for damages. And in fact, the plaintiff's expert submitted different calculations with different material assumptions to the jury. And the assumptions were different in two key ways. The first way is this case was about cost of insurance rates and the plaintiffs asserted State Farm should have used a different cost of insurance rate than it did. Plaintiff's expert provided two separate replacement rates and calculated different amounts of damages using those separate rates. It was up to the jury to determine whether those rates were credible and whether those rates were appropriate. Wasn't the methodology used between those different models the same and does that matter? The methodology in terms of how the mathematics works is the same. But what's different is the assumption that was used as to what the replacement price should be. And without knowing that, without that being readily ascertainable before trial, there's no way State Farm could have known what it owed. As Missouri law clearly holds, a defendant should not be required to run interest on an amount unless it knows what it owed. And many of these policies terminated years if not decades or more. So your argument is damages were not ascertainable if the components or the elements of the various models, the assumptions that fed into those models were not known. Am I somewhat close to your The parties didn't agree as to the measure of damages and it was a hotly contested issue. And Missouri Court of Appeals concluded that when that occurred, the damages were not liquidated. That's the same here. That assumption, that key driving assumption as to the amount was not determined by any readily ascertainable or recognized standard. As this court again held in 2013 in the Travelers case describing the Hampton Foods case, excuse me, a 1986 decision of this court, the uncertainty existed because no prior law established a standard by which to measure the type of damages at issue. There was no prior law that established a recognizable measure of damages. Here, the plaintiffs asserted that the product should have been offered at a different price. And what that price was, it was up to the jury to determine. State Farm denied that it should have been offered at a different price throughout. And until the jury reaches its verdict, it could not know what it owed to any policyholder. And in fact, the other key assumption in the model is whether those replacement rates, when they were higher than State Farm's rates, should be used in calculating damages or not. Plaintiffs asserted that State Farm's rates should act as a functional cap on the calculation of damages. State Farm could not have known what it owed to those policyholders until such time as the jury rendered its verdict. That is precisely when, and not before, the amount of damages could have been ascertained. And we believe that reversal is warranted on that basis. If you look at Missouri cases, they really divide the predetermined interest into two categories. One, where there is just a dispute about the amount. One appraiser comes in and says, I think the property is worth $150,000. The other appraiser says it is worth $200,000. In those cases, generally the plaintiff makes a demand because the amount is known by a recognized standard of property appraisal. Here, that's not the case. Whether and how to set that rate is unknown. And this court addressed very similar circumstances in the new court case cited in our briefs. It's applying Nebraska law, but Nebraska law on this is very similar to Missouri law. And the court concluded that where a challenge is made to the propriety of the rate that is being appraised, it cannot be liquidated until such time as the court reaches its conclusion. Design of rates is an inexact science, this court said, and therefore the amount of damages are not readily ascertained by a recognized standard. That's this case. It's on all fours with new court. And there are no cases in Missouri that show a dispute about methodology and whether and how to calculate damages is vulnerable to an award of premium interest. It's just not. There's just no case out there. The case is plaintiffs rely on Travelers Property Casualty Company is a case where a demand was made. They made a demand for $10 million and it was a dispute between excess insurers about who owed how much money. But the demand was $10 million. That was known. It was not disputed here. The amount of the damages was not known until the verdict. And the way they should be calculated, the credibility of those assumptions was not known until the jury reached its verdict. Second reason this court should reverse, independent of the first, is that this was a tort case. And Missouri has specific statutory requirements for recovery in tort. And those were admittedly not met. And in the only case that either side can find that's what is the record say? I mean there were contract claims here too weren't there? There were. There were. So I mean on what basis do you suggest this is a tort case when we have a general verdict? So there's a general verdict that provides recovery for both a tort claim of conversion and a contract claim. Okay but that's different from saying it's a tort case isn't it? I mean it well it's a tort it is a tort case. The plaintiff's had a contract case. And it's also a contract case. And in Shrydman it was also a contract case and a tort case. Were the claims there merged? They were merged into one. Were the claims here merged? They were. In this case they were. Did the court merge the causes of action? The causes of action were merged into one damages of the war. Did the court merge the causes of action here? I think we're talking past each other Judge. The court instructed the jury separately on conversion and it found State Farm liable for conversion. The court instructed on the breach of the contract claims too? Instructed on one of the two breaches of contract claims. Okay so in Shrydman is that similar the case you just cited? Is that a similar situation? Did the court instruct on both theories in that case? It did. It did. And it did instruct on multiple theories in that case. And in fact I believe the record in that case would show that there were different damages involved for different public claims. But when evaluating the pre-judgment interest claim in Shrydman, the Missouri Court of Appeals says because we have concluded that the breach of contract conversion and breach of partnership claims merged with the fraud claim, we need only address whether the circuit court erred in not imposing pre-judgment interest on the fraud claim. So there were separate claims that were tried together in one trial and it resulted in an award of damages. And the Missouri Court of Appeals said the only thing they need to look at is whether pre-judgment interest is warranted on the fraud claim. And they concluded it was not. One of the reasons they reached that conclusion was that there was no compliance with the statute. And the statute requires demand. No demand was made. The second reason was that the damages were not readily ascertainable before trial. That's also true here. Same result is here. And the underlying purpose of that demand statute for torts is the same as the underlying purpose of the liquidated damages requirement. If a defendant does not know what it owes, it should not be held liable for failure to pay it. When the policy lapsed in 2008, State Farm had no idea that Mr. Vote was going to come in 2016 and allegedly returning the wrong rate. And it contested liability all the way through. The district court entered summary judgment for the plaintiffs after jury selection and before the opening arguments at trial. And we had a trial exclusively on whether there were damages and if there were, how they should be calculated, and what amount. This is the paradigmatic case where the damages are not readily ascertainable. Finally, should the court conclude that... does not affect the conclusion that damages are ascertainable? That's true, Your Honor. In those cases, very frequently, as in the trial case, demand is made. And also very frequently, they're looking at a recognized standard. And they're ascertainable by a recognized standard. That's the City of Sullivan case. City of Sullivan was a misclassification case. There was a commercial rate, a residential rate, and an industrial rate. And the plaintiffs claimed they were wrongly classified. Those other rates were known and published. And there were disputes about how much electricity was consumed that would affect the amount that should have been charged. And there were disputes about which classification they should be in. That's not this case. This case is, you charged us this, and we argue you should have charged us less. Either less A, less amount A, or less amount B, or less amount C, or less amount D, whatever the jury says. Under those circumstances, that was the plaintiff's own evidence at trial. Under those circumstances, there aren't Missouri cases that find prejudgment interest is warranted and that the amount of the damages were readily ascertainable. I reserve the balance of my time for rebuttal and address the issue if necessary at that time. All right, Mr. Wilders. Good afternoon, your honors. May it please the court. It's been three years since the jury verdict, 15 months since this court's opinion affirming the $34 million judgment and remanding for the district court to consider prejudgment interest. Despite that amount of time, State Farm still has not paid a single penny to the class members who have won the $34 million judgment. It's delayed satisfaction of the judgment first by seeking discretionary review and now by seeking an appeal on the issue of prejudgment interest. It is our position that the court decided the issue of prejudgment interest in the first appeal, and I would like to explain why, and then I will address the second question of if the court had not decided it, whether the damages were readily ascertainable was briefed by both parties to the first appeal. Second, the court unambiguously held in granting and reversing the district court's denial of prejudgment interest that the plaintiffs were entitled to prejudgment interest through the date of judgment. That phrase appears two times in the court's discussion of this issue. The court said on page 29 of its first opinion, vote is entitled to prejudgment interest at the 4% rate contained in the contract. Counsel, I don't believe we had any sort of liquidated damages analysis in that opinion. Is that correct? That is correct, your honor. The court did not engage or did not write specifically on that issue. It did acknowledge that liquidated damages and readily ascertainable damages was part of the damages should be at the 9% statutory rate or at the 4% rate decided by contract, but the court twice said that we were entitled to prejudgment interest not at the 9% rate that we asked for, but at the 4% rate, and it further described the district court's error as erroneously denying the award for prejudgment interest. Now, the problem here is if State Farm was dissatisfied with what the court chose to write on, and courts quite commonly don't write on every single issue that are addressed in the appeals, then they should have asked this court for clarification or they should have sought rehearing. The court specifically said we were entitled to interest. The word entitled means a right to that issue, a right to that thing or benefit. That's the opposite of what State Farm is now claiming, which is that we have no right to any prejudgment interest. State Farm moved for rehearing on Bonk. It did not raise this issue. State Farm sought certiorari to the Supreme Court. It did not raise this issue. State Farm even sought to recall the mandate in the first appeal after it issued four or five months later. It still did not raise this issue. So it had multiple opportunities to find out whether this court really meant that plaintiffs were entitled to prejudgment interest or whether we had to go back down, litigate this issue in the district court in the first instance, get an opinion from Judge Lowry, fight an appeal, and move forward. And the consequence of all that is now that there has been a multi-year delay that this class who's been waiting over decades for a return of these overcharges still has not been paid. For those reasons, we think the simplest way to affirm this judgment is to say State Farm had an opportunity to raise this. It did. The court held that we were entitled to prejudgment interest. Judge Lowry followed that and that's the end of the appeal and this matter should result in an affirmance. Second, even if this court were to engage on the issue of whether the damages were readily ascertainable, we meet the standard under Missouri law as found by the district court. The demarcation between what is the methodology that is disputed or the amount of damages. In this case, State Farm's own written policy that they were required to comply with dictated how these rates were supposed to be calculated. This is not an issue where the breach of contract resulted in consequential damages. This is an issue where they were supposed to calculate these things every month according to the policy on the correct basis. The rates were supposed to be based on age, sex, and rating class for each policy year. The rates were not supposed to include the unlisted factors that the district court found by summary judgment should be excluded from the rate and that is what the damages sought to determine. Here, the damages were calculated based on a very simple methodology. Take the rates State Farm used, replace them with the rates they were supposed to use that didn't include the impermissible factors, and then calculate how much money the class members lost. It's undisputed that it was State Farm that wrote the policy and it was State Farm that generated both the rates it used and the rates it was supposed to use. Here, Plaintiff's expert relied entirely on pricing mortality rates from State Farm's historical pricing files for this very policy. He didn't generate his own rates. It wasn't a question of discretion or opinion. He took the rates that were in State Farm's own files that they said represented the rates without the unlisted factors and he substituted them in. There was nothing holding back State Farm from making that calculation in the first instance. Some of the cases that State Farm cites, this is the difference between those cases and the cases that we cite. In the new court case that they say I think is their top case here, they claim that's a rate case and therefore it controls. Well, the problem there was the challenge to the rates was whether the rate was fair, reasonable, and non-discriminatory. That is what this court said was the design of such rates is not an exact science. It's not possible, this was from the court, it's not possible to compute the amount of damages without reliance on opinion or discretion. Here, the damages were computed with rates that State Farm itself had in its pricing files for this policy. There were only ever two sets of rates that were found in the historical pricing files. The rates State Farm used and the it's not plausible to say that it was not readily ascertainable for State Farm to calculate the damages based on the rates that they possessed. The City of Sullivan case is very similar to this case because there were three or four sets of rates and the question was which rates should have been used by the defendant. Here, there were two sets of rates. There were the cost of insurance rates and there were the cost of damages. That's very similar to what we have here. I'd also want to address, I think, Judge Cobes, you asked the question whether State Farm was arguing that if the inputs to a methodology are disputed, whether that prevents an award of prejudgment interest. Well, I would direct the court to the Barley v. Gabriel case. That's from this circuit, 829F3-1030 cited in the brief. There, the defendant owed the plaintiff for, quote, actual costs of labor, but the number of hours, and it was not disputed that should be calculated by multiplying the number of hours by the hourly rate, but the number of hours were disputed at trial. There, once again, you have an input that was disputed but did not preclude the award of prejudgment interest. Nor did what State Farm characterizes as the multiple different damages models offered by plaintiff's expert. We offered one damages model, one damages methodology. What happened was their expert came forward and said, oh, well, you didn't account for pooling. You didn't account for tobacco. You didn't account for the instances in which the rates were already lower than the pricing mortality rates. Now, their expert, of course, failed to calculate what the effect that would have on damages, and our expert did that so the jury had that information. He didn't change his methodology. You know, they say in their reply brief multiple times that our expert or the plaintiff couldn't agree on how to calculate damages, so it could not have been readily ascertainable. That's a flat misstatement of the record here. What happened was their expert came forth with criticisms. Our experts quantified it, and the jury ultimately decided that they were entitled to one of the things, which was an offset. The offset that they were entitled to, Missouri law is very clear, and this case's courts are very clear. Even an unliquidated set-off or offset does not preclude the award of prejudgment interest, and here the offset simply meant replace the cost of insurance rates with the pricing mortality rates from their own files, so it wasn't even an unliquidated offset. It was just a question of whether they were entitled to it under the law, and we cite multiple cases showing that the set-off is not a basis for denying prejudgment interest, travelers, A.G. Edwards, and both. Now, I think that State Farm's rebuttal to that is to say, well, this wasn't really an offset or a set-off as the law defines it. That's foreclosed by law of the case. On page seven of Judge Lowry's opinion, she addressed this. She characterized it as a set-off and offset. That's how it was characterized prior to the first appeal, and this own court characterized it as an offset. On page 18 of its first opinion, it says right here, at trial, State Farm presented an offset defense, arguing it was entitled to an offset for months where it charged a COI fee that was less than what a COI fee based on the mortality factors would have been. So that's what it was. That doesn't preclude an award of prejudgment interest. We believe that whether the mandate rule precludes it or whether the court analyzes this, that the court should absolutely affirm on that basis. Let me address next the conversion, the characterization that this was a tort case. There was no merger by the district court of any damages. The verdict here in this case, which is at page 197 of the joint appendix, required the jury to find one, whether there was a breach of contract, two, whether there was a conversion, and three, what the damages were. There was only one line for damages and State Farm did not object to that because there was only one damages methodology presented for both claims. So whether we would have won on the conversion claim or we would have won on the contract claim, we still would have been entitled to the same damages. The Schreibman case doesn't address that fact. That was a case in which there were different damages which merged together, different damages awards on different claims that merged together. And if you read that opinion, it cannot support the position that State Farm is taking here. Finally, the calculation that was adopted by the district court, that is reviewed for abuse of discretion. We think the district court got it correct here. There's absolutely no double recovery by the plaintiffs here. State Farm only produced data for the experts to calculate damages up through December of 2017. Therefore, there was no calculation of pre-judgment interest after that date. The 400,000 that they say should not have been included is simply interest as of December through the time of judgment that could not have been included in the jury's award, but is recoverable by statute. For that reason, the district court did not abuse its discretion. I would like to use my last few minutes to briefly address the motion for limited remand that the court has pending before it. There is a significant issue here when the US Supreme Court denied certiorari nearly six months ago, and we're still not able to get a writ of execution on the $34 million in post-judgment interest that no one disputes is an incontestable amount at this point. That's money that we should be able to distribute to these 24,000 class members. We can't do that because of a bunch of procedural issues that preceded this appeal. Specifically, State Farm insisted that Judge Lowery needed to amend the original judgment to include the amount of pre-judgment interest. When she did that, they took a notice of appeal from that single judgment. Then when she was ready to rule on our writ of execution, she determined that there was a question of whether she still had jurisdiction because there was only one judgment that included both the $34 million, which is no longer contestable, and the $4 million of pre-judgment interest. What we would ask is that she's ready to sever those judgments, let this appeal proceed under a judgment limited solely to pre-judgment interest, and let us distribute the $34 million to these class members. All we need from this court is order granting a limited motion of remand, which is provided by the federal rules, so that she can perform that step. Then this court can retain and does retain jurisdiction to decide this appeal in the ordinary course of its opinion writing. There is absolutely no reason why this class should have to wait any longer to get a judgment for overcharges that State Farm has made for decades, and on a verdict they got three years ago, and a judgment that was sexually. We would ask that the court affirm the judgment here, and that it grant the motion for limited remand so that we could get the money into the hands of these policyholders whose State Farm has overcharged. If there are no further questions, I will be happily seed the rest of my time. Judge Shepard, may I ask one question? Certainly. You may, Mr. Wilber. You may probably cover this and admit it went past me. Has State Farm argued that the award should be reduced to account for the class members who held State Farm policies during a seven-month period before judgment? Yes, State Farm... Is there anything to that argument, or is it... Well, I should let you answer my own question. You're asking if they made that argument in the current appeal briefs? Yes, that issue is before you right now. That issue is reviewed for abuse of discretion. It determines the calculation of the interest, and the issue is whether policyholders who we know the jury did not award damages for that period of time because State Farm never gave us data past that December 2017 date between the June 2018 judgment. So we didn't have the data to calculate their damages. We didn't have the data to calculate the interest during that period, and so it wasn't part of the damages award, but certainly it is recoverable as pre-judgment interest under the statute. Oh, thank you. Does that answer your question? Thank you very much, Judge. Very well. Mr. Wood, you have a few minutes. Thank you. First, on whether the prior panel decided this issue, as Judge Kovas noted, it did not discuss the issue at all. And when a district court entered an award of pre-judgment interest in 1984, and the party appealed because it did not specify whether the liquidated damages issue was resolved, this court reversed. That's the Kisco case in 1984. Missouri law requires a finding on that. There was no finding in the district court before, and no finding by this panel. On whether the amount of damages was not. It was not. Mr. Waters recites the court to the Barkley case. Please read the Barkley case. In Barkley, demand was made for an amount certain pre-trial. Invoices were sent that established what the amount was, and both parties agreed that as to the proper measure of damages. That is not this case. That is not this case. In this case, it had to do a four-day trial to determine whether any amount was owed, and if an amount was owed, how much. Until the jury reached that conclusion, the amount of damages were not liquidated and was not readily ascertainable. On the final point, Judge Woolman, the issue as to the 11,000 current policyholders, there is not pre-judgment interest for them. Interest is a component of the damages that was sought from the jury. And the trial evidence establishes that the amount of damages over time started to go down because the replacement rates were higher. And plaintiffs made a calculated strategic decision not to estimate the amount of damages, not to update the amount of damages, not to ask for more information to update the amount of damages, because they knew this. As recited in our briefs, the portion of the trial transcript establishes that the amount was going down. The jury awarded those current policyholders damages, and that should not be $411,000. I urge this court to reverse, appreciate the court's time, and thank you. Very well. Thank you, counsel, for your arguments. You've been very helpful. And the case is submitted. The court will render a decision in due course.